UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QUALITY MANAGEMENT AND CONSULTING SERVICES, INC., individually and as the proposed representative of a class of similarly situated persons, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 11 C 06791 |
| v. | ) ) | Judge Edmond E. Chang |
| SAR ORLAND FOOD INC., SAR MARKETPLACE FOOD INC., YATSEN GROUP, INC., SMK FRANCHISING INC., and JOHN DOES 1-10, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Quality Management and Consulting Services, Inc., both for itself and as a proposed class representative, has sued SAR Orland Food Inc., SAR Marketplace Food Inc., Yatsen Group, Inc., SMK Franchising Inc., and ten John Does (collectively, Defendants). Quality Management seeks damages for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*[1] Quality Management has moved to certify a class action. R. 53, Am. Mot. Class Cert. For the reasons stated below, the Court denies the motion.

**I. Background**

In April 2011, Defendants opened Sarku Japan restaurant in Schaumburg, IL. R. 54-5, Pl.'s Ex. E, Uy Dep. at 17. As one part of its marketing campaign, Sarku

---

[1]Jurisdiction is proper under 28 U.S.C. § 1331.

employees began canvassing the Schaumburg area and collecting business cards from nearby businesses. R. 54-6, Pl.'s Ex. F, Spence Dep. at 35-36; R. 54-8, Pl.'s Ex. H, Samayoa Dep. at 28-29, 88-91. Sarku also collected business cards when it hosted a "VIP dinner" for local business executives and when it held two raffles that customers could enter to win iPads. Uy Dep. at 26-27; Samayoa Dep. at 29-30, 73. Altogether, Defendants collected between 300 and 500 business cards and created several lists containing the names and contact information of employees at local businesses. Spence Dep. at 62-63; Samayoa Dep. at 30, 41, 50-51.

That same spring, SmartFax, a Florida-based fax broadcasting company, sent Defendants a fax about SmartFax's advertising services. Spence Dep. at 24-26; Samayoa Dep. at 12-13. In response to the fax, Defendants contacted SmartFax and hired the company to send fax advertisements with coupons and portions of its menu to promote Sarku. Spence Dep. at 16; R. 54-7, Pl.'s Ex. G, Lopez Dep. at 7, 16-18. To prepare for the fax campaign, Defendants mailed the physical business cards and contact lists that Sarku had compiled to SmartFax. Spence Dep. at 47-50; Samayoa Dep. at 31-32. Defendants claim they no longer have the business cards, but they still have a partial list of the information they gathered from the cards. Spence Dep. at 50-51; Samayoa Dep. at 45.

It is undisputed that SmartFax sent Quality Management faxes advertising the Sarku restaurant. *See* R. 51, Answer ¶ 13; R. 54-4, Pl.'s Ex. D, Defs.' Resp. Req. Admis. ¶¶ 2-5. But the parties dispute how SmartFax identified the fax recipients. It is Defendants' understanding that SmartFax sent faxes only to the contacts that Sarku

2

compiled from the business cards and lists that it mailed to SmartFax. *See* R. 59, Defs.' Resp. Br. at 5; Spence Dep. at 47-48; Lopez Dep. at 19-20. Quality Management, however, emphasizes that Defendants could not verify whether SmartFax ever used or even received the business cards and lists from Sarku. R. 54, Pl.'s Br. at 4. Instead, Quality Management contends that SmartFax sent faxes to a list of recipients that SmartFax independently generated from an "online database." *Id.* at 6.

In support of its theory, Quality Management relies on the deposition testimony of Gerald Faoro, the owner of a competing Florida-based fax-broadcasting company. R. 54-11, Pl.'s Ex. K, Faoro Dep. at 6, 29-30. In years past, Faoro had worked closely on fax-broadcasting projects with Nathan Tack, a person who later went to work for SmartFax. *Id.* at 7-8, 10, 14. Faoro testified that when he worked with Tack, they obtained their recipient lists from the same online database. *See id.* at 15. Although Faoro does not work for SmartFax and admitted that he has no personal knowledge of how SmartFax compiled the recipient list for the Sarku fax campaign, *see id.* at 37, 46, 50, he testified that he was "one hundred percent positive" SmartFax used this database to generate the Sarku target list, *id.* at 15; *see also id.* at 63. Faoro refused to identify the source of this database, *id.* at 39-43, but he did provide a list that he purportedly created from the database that contained 1,580 fax targets using Sarku Japan's Schaumburg address and a three-mile radius, R. 54-11, Pl.'s Ex. 2, Faoro List.

Regardless of the method SmartFax used to identify recipients, between June 20, 2011, and August 15, 2011, Quality Management received six faxes advertising Defendants' Sarku Japan restaurant in Schaumburg, Illinois. R. 38, First Am. Compl.

3

¶ 13; R. 38-1, Pl.'s Ex. A. Patrick Camasta, Quality Management's owner and sole employee, claims that he did not request these faxes or give Defendants permission to send them. First Am. Compl. ¶ 16; R. 54-10, Pl.'s Ex. J, Camasta Dep. at 13, 15. Camasta also claims that he has never been to a Sarku Japan restaurant and that a Sarku employee has never asked him for his business card. Camasta Dep. at 51-52, 62-63, 65. Quality Management also notes that Quality Management's fax number is not on any of Defendants' contact lists, Pl.'s Br. at 4-5; *see also* Samayoa Dep. at 53-54, but it is on the Faoro List. *See* Faoro List at 1. After Quality Management filed this lawsuit, SmartFax gave a copy of Camasta's business card to Defendants' counsel. *See* R. 59-8.

## II. Legal Standard

Courts usually should decide the question of class certification before turning to the merits of a given action. *See Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008). To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the subsections of Rule 23(b). *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012) (citation omitted). "Failure to meet any of the Rule's requirements precludes class certification." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)) (internal quotation marks omitted).

"A class may be certified only if 'the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *Creative Montessori*

*Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citation omitted). The Court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Dukes*, 131 S. Ct. at 2551 (recognizing that class-certification analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"). In the end, the Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (internal quotation marks and citation omitted).

### III. Analysis

#### A.

Even before turning to the Rule 23(a) requirements, the Court must address an anterior question: whether Quality Management's proposed class is ascertainable. A plaintiff must show that the class is identifiable as a class and definite enough that it can be ascertained. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citations omitted). In other words, "there is a 'definiteness' requirement implied in Rule 23(a)." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)

5

(citations omitted); *see also Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist." (citations omitted)). Indeed, each of the threshold prerequisites for class-action certification in Rule 23(a) refers to a "class," and thus each prerequisite cannot be evaluated if the class itself is not ascertainable. *See* Fed. R. Civ. P. 23(a)(1) (numerosity of the "class"), (a)(2) (law or fact questions common to the "class"), (a)(3) (typicality of the named plaintiff's claims or defenses compared to those of the "class"), (a)(4) (adequacy of the proposed class representatives to protect the interests of the "class"). Beyond being required to evaluate the Rule 23(a) prerequisites, the definiteness requirement serves two additional purposes. First, it alerts the parties and the Court to the burdens that identification of the class might entail, which is relevant to whether the proposed class action is manageable. *Simer*, 661 F.2d at 670. Second, ascertaining a definite class ensures that the parties actually harmed by the defendants' conduct will be the recipients of the relief eventually awarded. *Id.*

Here, Quality Management defines the putative class as:

> All persons who were sent a fax in June 2011, July 2011, or August 2011 that identified "Sarku Japan®" at 1408 East Golf Rd., Schaumburg, and included portions of a menu and three "fax coupons."

Am. Mot. Class Cert. at 1. The question at the outset is whether Quality Management has met its burden of demonstrating that the members of this proposed class are identifiable. Because Quality Management did not obtain discovery from SmartFax,[2]

---

[2] Quality Management did issue a subpoena to AT&T to obtain a copy of SmartFax's call records. *See* R. 59-28. This Court quashed that subpoena, however, because it was exceedingly

6

the only information that Quality Management has to identify putative class members is the Faoro List. Defendants argue that the Court should not consider this List and Faoro's deposition testimony because they are inadmissible under the Federal Rules of Evidence. Defs.' Resp. Br. at 14-15. Quality Management disagrees. Citing a case from the District of Minnesota, Quality Management contends that the Court need not strictly apply the Rules of Evidence at the class-certification stage of the lawsuit. R. 63, Pl.'s Reply Br. at 5 (citing *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D. Minn. 1999)).

The federal courts of appeals have not directly addressed whether evidence used in a class-certification motion must be admissible under the Federal Rules of Evidence. *See, e.g.*, *Flores v. Anjost Corp.*, 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) (listing conflicting cases from numerous district courts). The Supreme Court has explained, however, that Rule 23 is not a "mere pleading standard." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 131 S. Ct. at 2551). "[A]ctual, not

---

overbroad and raised the possibility that Quality Management's counsel was fishing for calls related to other cases or potential cases. R. 27. Quality Management did not seek the Court's approval to issue any additional subpoenas and, as far as the record shows, never again attempted to obtain discovery from SmartFax. *See* Defs.' Resp. Br. at 18-19. On April 26, 2012, this Court denied Quality Management's motion to extend discovery; discovery then closed on May 4, 2012. R. 37. Defendants argue that this discovery strategy shows that Quality Management's counsel would provide inadequate representation for the proposed class. Defs.' Resp. Br. at 19. The Court does not agree. There could be reasonable explanations why Quality Management's counsel relied exclusively on the Faoro List and testimony (perhaps counsel believed that Faoro would explain the source of the List), so counsel did not further pursue obtaining discovery from SmartFax. So that one decision is not enough to find inadequacy. Having said that, failing to follow-up with SmartFax ultimately does prove fatal to Quality Management's certification motion because, as a result, Quality Management has not met its burden of identifying the putative class members, as discussed in the text.

presumed, conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Indeed, in the Seventh Circuit, the plaintiff must establish each of the Rule's requirements by a preponderance of the evidence. *See Messner*, 669 F.3d at 811 (citation omitted). Federal Rule of Evidence 101, moreover, states that the Rules "apply to proceedings in United States courts." Fed. R. Evid. 101(a). And Rule 1101, in turn, does not except or change the application of the Rules of Evidence at the class-certification stage. *See id.* 1101(d); *cf. Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989) (noting that Rule 23(e) fairness hearings are not in Rule 1101's list of exceptions). But either way, district courts exercise broad discretion when ruling on a class-certification motion. *Ervin*, 632 F.3d at 976 (citation omitted).

Even under a relaxed evidentiary standard, Quality Management fails to meet its burden of satisfying the threshold requirement of ascertaining an identifiable class. In any lawsuit, ascertaining an identifiable class is important at the class-certification stage, and it is even more important here because class members would have to prove that they received a fax from Sarku to be entitled to statutory damages. *See* 47 U.S.C. § 227(b)(3)(B). But Quality Management cannot identify who the fax recipients are even for the purposes of class certification, and the Faoro List is not sufficient evidence to identify the class. For one, the List is unreliable. Even setting aside the issue of hearsay,[3] considering the List would require the Court to rely on a long chain of

---

[3] A business record is an exception to the hearsay rule, Fed. R. Evid. 803(6), but Quality Management does not offer sufficient evidence to fit the List into that exception.

unsupported inferences. Most problematic, Faoro refused to lay a proper foundation for the List by identifying the source of the database that produced it. *See* Faoro Dep. at 39-43. If Quality Management wished to rely on the List for the class-certification motion, at the very least Quality Management should have moved the Court to compel Faoro to disclose the source of the List. In short, because the Faoro List is unreliable and because Quality Management has provided no other evidence that can be used to identify the class, class certification cannot be granted.

As Defendants note, this conclusion is consistent with the district court's decision in *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312 (N.D. Ill. 2008). In *Saf-T-Gard*, a similar putative class action filed under the TCPA, the parties did not obtain a list of fax recipients and had no information that would enable them to identify those recipients. *Id.* at 313, 315. As a result, the court did not certify the class because it found that there was no realistic way to identify potential class members. *Id.* at 315; *see also Levitt v. Fax.com*, 2007 WL 3169078, at *4-5, *8 (D. Md. May 25, 2007) (decertifying a TCPA class in part because the plaintiff did not have a means of identifying who received the offending faxes). The same is true here. Through discovery, Quality Management has been unable to obtain transmission reports or other lists that might reliably demonstrate the identity of the fax recipients. It has therefore failed to meet its burden for this threshold requirement.

**B.**

Even if Quality Management could identify the putative class, there is an alternative basis to deny class certification. Defendants have an individualized defense

against Quality Management in particular that may undermine the typicality and adequate-representation requirements. To certify a class, the Court must determine that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (a)(4). In many cases, including this one, these two requirements merge. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (citations omitted).

It is true, as Quality Management notes, that the typicality requirement is generally determined by reference to the defendants' actions alone. *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." (citations omitted)). But it is also true that "[t]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd.*, 637 F.3d at 726 (internal quotation marks and citation omitted). In such cases, "[t]he fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *Id.*; *see also Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or

10

a small subclass, then the named plaintiff is not a proper class representative." (citation omitted)).

The TCPA prohibits sending "unsolicited" fax advertisements unless the sender can show: (1) the recipient consented, or (2) there was an "established business relationship" between the sender and recipient and a valid opt-out notice on the fax. 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4)(iii). Defendants argue that Sarku had an established business relationship with Quality Management. Defs.' Resp. Br. at 16, 18. Although Quality Management recognizes the viability of this defense, it argues that the defense is applicable to the class as whole and therefore does not undermine its class-certification motion. *See* Pl.'s Reply Br. at 11. It points to inconsistencies in the discovery record and Defendants' deposition testimony about the timing of SmartFax's requests for "EBR [existing-business-relationship] fax numbers" and when the faxes were actually sent. *See id.* at 7-8. It also argues that Defendants cannot prove that SmartFax ever received or used the business cards and lists that Sarku mailed, *see* Pl.'s Br. at 4, and it emphasizes that Defendants admit that they do not know to whom SmartFax actually sent faxes, *see* Pl.'s Reply Br. at 7 (citing Samayoa Dep. at 68). In the end, Quality Management believes all of these factual inconsistencies can be resolved on a class-wide basis.

But, as Quality Management recognizes, SmartFax has produced one business card—Camasta's. *Id.* at 7 (citing R. 59-8). As a result, the business-relationship defense as applied to Quality Management is distinguishable from the possible application of the defense to the class as a whole. *Cf. Koos*, 496 F.2d at 1165 (noting that typicality

11

is only met when "defenses [are] applicable to the class as a whole"). SmartFax had Camasta's business card, but it may not have had others. This factual dispute may undermine the typicality and adequate-representation requirements.

In urging the Court to disregard Camasta's business card, Quality Management is not owning-up to the fact that the burden at the class-certification stage is its own. *See Retired Chi. Police Ass'n*, 7 F.3d at 596. Quality Management stresses that *Defendants* have no evidence of how or when SmartFax obtained the card, and that *Defendants'* explanation of sending the business cards to Sarku is contradicted by Camasta's testimony. Pl.'s Reply Br. at 6-7. But it was *Quality Management*'s burden to demonstrate that its claim is typical and that it is an adequate class representative. And the Court cannot ignore that SmartFax did produce Camasta's business card.[4] What's more, if Quality Management doubted the credibility of Defendants' testimony, it could have served a subpoena on SmartFax to produce the rest of the business cards that Defendants allegedly mailed to it. But because discovery has closed and SmartFax has only produced one business card—Camasta's—this defense is unique to Quality Management. Therefore, Quality Management's claim is not typical, and as a result, it is not an adequate class representative.

---

[4]Quality Management highlights Faoro's testimony that SmartFax's employee, Nathan Tack, had obtained business cards from other companies who had previously threatened or filed suit to assert an *ex post facto* business-relationship defense. *See* Pl.'s Reply Br. at 7 (citing Faoro Dep. at 25-28). But on cross-examination, Faoro refused to disclose his source for this information. Faoro Dep. at 66-67, 69. Thus, as with the Faoro List, Quality Management has failed to lay a proper foundation for the Court to establish that Faoro's testimony on this point is sufficiently reliable.

Because Quality Management has failed to meet the requirements of Rule 23(a)(3) and (a)(4), the Court need not address the numerosity, commonality, and predominance requirements.

### IV. Conclusion

For the reasons stated above, the Court denies Quality Management's motion [R. 53] for class certification. At the November 5, 2013 status hearing, the parties should be prepared to discuss how to move forward with Quality Management's individual claim.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 30, 2013